IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

STEFANIE D. D., )
)
    Plaintiff, )
)
v. ) Case No. 19-CV-290-CDL
)
ANDREW M. SAUL, )
Commissioner of the )
Social Security Administration, )
)
    Defendant. )

**OPINION AND ORDER**

Plaintiff seeks judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c)(1), (2).[1] For the reasons set forth below, the undersigned **affirms** the Commissioner's decision denying benefits.

**Procedural History**

Plaintiff filed an application for social security disability benefits on June 9, 2016. Plaintiff alleges she became disabled due to fibromyalgia, Carpal Tunnel Syndrome (CTS), depression, anxiety disorder, obesity, Hashimoto's (Thyroiditis) Disease, migraine headaches, hypertension, Irritable Bowel Syndrome, and Gastroesophageal Reflux Disease

---

[1] On November 5, 2020, the action was reassigned from Magistrate Judge Frank H. McCarthy pursuant to General Order 20-37. (Doc. 24).

(GERD). Plaintiff alleges an onset date of May 1, 2014. Prior to the onset date, Plaintiff worked as a salesperson and makeup demonstrator. The Social Security Administration denied Plaintiff's application on initial review and on reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ).

The ALJ held a hearing on June 12, 2018. Testimony was given by the Plaintiff and Vocational Expert (VE) Marsha N. Heald. On June 27, 2018, the ALJ issued a decision denying disability benefits. (R. 14). The Appeals Council affirmed the decision on March 21, 2019. (R. 1). Accordingly, the Court has jurisdiction to review the ALJ's June 27, 2018 decision under 42 U.S.C. § 405(g).

## Standard of Review

Judicial review of a Commissioner's disability determination "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citing *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, __ U.S. __, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the court

may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## Agency Proceedings

The Social Security Act (the Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled and, therefore, entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). A finding that the claimant is disabled or is not disabled at any step ends the analysis. *See id.*; *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

At step one, the claimant must demonstrate that she is not engaged in any substantial gainful activity. *See Lax*, 489 F.3d at 1084. Here, the ALJ determined Plaintiff had not engaged in substantial gainful activity since May 1, 2014. (R. 19). The ALJ's determination at step one is not challenged and is supported by substantial evidence.

At step two, the claimant must establish an impairment or combination of impairments that is severe. *See id.* A claimant who does not have a severe impairment is not disabled. *See Williams*, 844 F.2d at 1084. Here, the ALJ determined that Plaintiff has severe impairments including fibromyalgia, CTS, depression, anxiety disorder, obesity,

3

and Hashimoto's disease (a thyroid disorder). (R. 19-21). Thus, the ALJ properly proceeded to step three.

At step three, the ALJ determines whether the claimant's severe impairments are equivalent to one of the impairments listed in Appendix 1 of the regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams*, 844 F.2d at 751 (internal quotation and citation omitted); *see* 20 C.F.R. §§ 404.1520(d); 20 C.F.R. Part 404, subpt. P, app'x 1 (Listings). If the claimant has an impairment that meets all the criteria of a Listing, the claimant is presumed to be disabled and is entitled to benefits. Otherwise, the ALJ proceeds to step four.

Here, the ALJ found at step three that Plaintiff's physical impairments do not meet or equal the criteria for any listing. The ALJ placed specific emphasis on Listing 1.00 et seq., Musculoskeletal system; Listing 11.00 et seq., Neurologic Disorders; and Listing 14.00, et seq., immune system disorders. (R. 21). The ALJ additionally found that Plaintiff's mental impairments do not meet or medically equal any Listings. (R. 23). In accordance with these findings, the ALJ proceeded to step four.

At step four, the claimant must show that her impairment or combination of impairments prevents her from performing work she has performed in the past. If the claimant can perform her previous work, she is not disabled.[2]

---

[2] Step four is comprised of three distinct phases. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity (RFC) "based on all the relevant medical and other evidence." 20 C.F.R. § 404.1520(e). Second, the ALJ determines the physical and mental demands of the claimant's past relevant work. *Winfrey*, 92 F.3d at 1023 (citing 20 C.F.R. § 404.1520(e)). Finally, the ALJ

4

Here, the ALJ reviewed testimony of claimant and her husband, objective medical evidence in the record, and medical opinions from consultative examinations and from Plaintiff's treating physician, James Lackey, M.D. (R. 24-31). The ALJ determined that Plaintiff has the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) with the following limitations: The claimant is able to lift, carry, push or pull up to five pounds frequently and ten pounds occasionally. The claimant is able to sit for up to six hours in an eight-hour workday. The claimant is able to stand and/or walk up to two hours in an eight-hour workday. The claimant should have the option to stand for five minutes after thirty minutes of sitting, without leaving the workstation. The claimant should not be required to stand or walk for more than thirty minutes consecutively. The claimant is able to occasionally climb ramps or stairs, stoop, kneel, crouch or crawl, but should never climb ladders, ropes or scaffolds. The job should not involve exposure to extreme cold. The claimant is able to frequently handle or finger. The claimant is able to perform simple, routine tasks and interact with supervisors and co-workers on a superficial work-related basis. The claimant should not interact with the general public.

(R. 23).

The ALJ found evidence supportive of a "sedentary" RFC with postural, manipulative and environmental limitations due to fibromyalgia, Hashimoto's Thyroiditis and obesity. (R. 30). With regard to the Plaintiff's mental RFC, the ALJ found that the Plaintiff is limited to "unskilled" work and capable of interacting with supervisors and co-workers on a superficial work-related basis and should not interact with the general public. (R. 31). The ALJ concluded in sum, the above RFC assessment is supported by the

---

determines whether the RFC found in phase one allows the claimant to meet the job demands found in phase two. *Winfrey*, 92 F.3d at 1023.

combined effect of the Plaintiff's severe impairments and conservative treatment for pain, fatigue, depression and anxiety. *Id.*

The VE stated Plaintiff's past work as a sales clerk, cosmetics demonstrator, and cosmetics sales person required "light" to "medium" exertion and were "semi-skilled." (R. 31-32). Therefore, the VE testified that Plaintiff's past work exceeds the limitation to simple sedentary work. (R. 32). Accordingly, the ALJ found the Plaintiff is unable to perform her past relevant work as actually or generally performed. *Id.* Because the ALJ concluded that Plaintiff is not capable of performing any past relevant work, the ALJ proceeded to step five.

Once a claimant has satisfied her burden at steps one through four, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in the national economy, in light of the claimant's age, education, and work experience. *Lax*, 489 F.3d at 1084.

Here, after finding Plaintiff is unable to perform her past relevant work, the ALJ considered the relevant factors. Plaintiff is thirty-eight years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (citing 20 C.F.R. 404.1563). *Id.* The Plaintiff has at least a high school education and is able to communicate in English (citing 20 C.F.R. 404.1564). *Id.* Transferability of job skills is not material to the determination of disability, because using the Medical-Vocational Rules as a framework supports a finding that the Plaintiff is "not disabled" whether or not the Plaintiff has transferable job skills. *Id.* (citing SSR 82-41 and 20 C.F.R. Part 404, Subpart

6

P, Appendix 2). The Plaintiff's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. The VE testified that there were jobs that exist in the national economy for an individual with the Plaintiff's age, education, work experience, and RFC. (R. 33).

Based on these factors, the ALJ found Plaintiff's RFC enables her to perform jobs that exist in significant numbers in the national economy. Specifically, the ALJ identified three representative occupations that she determined Plaintiff can perform, citing the hearing testimony of the VE. *Id.*

**Document Preparer**, "sedentary" unskilled work, with a Specific Vocational Preparation (SVP) of 2, Dictionary of Occupational Titles (DOT) Code # 249.587-018, with approximately 20,000 such jobs available within the national economy;

**Touchup Screener,** "sedentary" unskilled work, with a SVP of 2, DOT Code # 726.684-110, with approximately 20,000 such jobs available within the national economy;

**Semiconductor Bonder,** "sedentary" unskilled work, with a SVP of 2, DOT Code # 726.685-0660, with approximately 30,000 such jobs available within the national economy. *Id.*

Accordingly, the ALJ found Plaintiff not disabled at step five.

## Plaintiff's Arguments

Plaintiff argues that the ALJ failed to properly consider the May 30, 2018 opinion of James Lackey, M.D., who was Plaintiff's treating physician at the time. Plaintiff asserts that as a result, the ALJ erred at steps three and four.

## Analysis

When the opinion of a treating physician is available in the record, an ALJ is required to give that opinion "controlling weight . . . as long as the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). "The treating physician's opinion is given particular weight because of his unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* (quoting *Doyal v. Barnhart,* 331 F.3d 758, 762 (10th Cir. 2003)). Accordingly, "[w]hen an ALJ rejects a treating physician's opinion, he must articulate specific, legitimate reasons for his decision." *Id.* (citing *Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) (quotation omitted)). "Additionally, 'when a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's report, not the other way around.'" *Id.* (citing *Goatcher v. U.S. Dep't of Health & Hum. Servs.*, 52 F.3d 288, 290 (10th Cir. 1995)).

If the ALJ decides that a treating physician's opinion is not entitled to controlling weight, she must determine the weight it should be given after considering: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the treating source's opinion is supported by

objective evidence; (4) whether the opinion is consistent with the record as a whole; (5) whether or not the treating source is a specialist in the area upon which an opinion is given; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(c)(2)-(6).

## Step Four

Plaintiff argues that, in determining her RFC, the ALJ failed to give proper consideration to Plaintiff's treating physician's opinion that she is restricted to only occasional reaching with both upper extremities. Plaintiff contends the reaching and push/pull limitations noted in Dr. Lackey's May 30, 2018 medical source statement (MSS) may limit Plaintiff's ability to perform the jobs the ALJ found she can perform. Defendant argues that the ALJ properly found that Plaintiff retained the ability to perform a range of sedentary work and had no limitations on her ability to reach. Defendant argues that the ALJ accorded Dr. Lackey's opinion little weight because it was inconsistent with the evidence in the record, and that the ALJ's decision is supported by substantial evidence.

The ALJ found the evidence supports an RFC for less than the full range of sedentary work; however, the RFC includes no reaching limitations. She noted that in his MSS, Dr. Lackey opined that Plaintiff could occasionally reach, push or pull and frequently handle, finger and feel due to her fibromyalgia. (R. 29) (citing Exhibit 12F, page 4). However, the ALJ concluded that some of the limitations offered by Dr. Lackey are not consistent with the medical evidence of record or the Plaintiff's own statements. (R. 30). For those reasons, the ALJ afforded Dr. Lackey's opinion "little weight." *Id.*

The ALJ noted that "[t]he majority of Dr. Lackey's limitations are based on [Plaintiff's] fibromyalgia and subjective complaints regarding fatigue." (R. 29). The ALJ noted examinations revealed multiple fibromyalgia tender points and that Plaintiff reported pain, which was treated conservatively with non-narcotic and over-the-counter pain medication. (R. 30) (citing Exhibit 19E). The ALJ noted that Dr. Lackey found manipulative limitations based on fibromyalgia, but his treatment notes contain little discussion of Plaintiff's CTS. *Id.*

However, the ALJ noted other medical evidence in the record inconsistent with Dr. Lackey's opinion limiting Plaintiff's reaching. At a September 24, 2016 consultative examination, Crysten Cheatwood, D.O. found as to Plaintiff's extremities "equal range of motion throughout." (R. 27; *see* R. 399). The ALJ acknowledged that Plaintiff reported difficulty washing dishes, tingling and numbness in her hands and wrists, and difficulty holding things due to CTS, but noted that the record includes "little objective evidence to support the degree of limitation alleged." (R. 30). For example, no nerve conduction studies or electromyograms documented neuropathies. *Id*.

The ALJ noted that physical examinations for CTS did reveal positive results on Tinel's, Phalen's and reverse Phalen's tests on the right side. *Id.* However, Dr. Cheatwood's examination found that Plaintiff had full and equal grip strength. *Id*. In addition, during Plaintiff's last full examination, on May 3, 2018, Plaintiff indicated that she does a lot of lifting, despite intermittent pain in her right elbow and shoulder. (R. 30-31). Significantly, the record lacks evidence that Plaintiff complained to her medical providers that she had significant limitations in her ability to reach. Plaintiff's only

10

reference to reaching was during her hearing testimony where she stated that reaching sometimes makes her dizzy. (R. 64). In contrast, both Plaintiff and her husband submitted Adult Function Reports indicating no reaching limitations. (R. 232, 248). Based on this inconsistent evidence, the ALJ reasonably found that other medical evidence in the record outweighed the reaching limitation noted on Dr. Lackey's MSS.

The ALJ thoroughly and accurately discussed the medical records regarding Plaintiff's reaching and manipulative abilities and reasonably found that the reaching limitation from Dr. Lackey's opinion is not supported by the medical record. Therefore, the ALJ's decision to give "little weight" to this part of Dr. Lackey's opinion is supported by substantial evidence in the record and should be upheld.

## Step Three

In his May 2018 MSS, Dr. Lackey checked a box indicating that Plaintiff cannot walk a block at a reasonable pace on a rough or uneven surface. (R. 536). Plaintiff argues that at step three, the ALJ erred in finding Plaintiff's condition does not equal the listing for a musculoskeletal disorder.

Listing 1.00 defines "inability to ambulate" as "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00. Listing 1.00B2b(2) states:

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore,

11

>examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*Id.* § 1.00B2b1.

Defendant argues that Dr. Lackey's finding that Plaintiff is unable to walk a block at a reasonable pace on rough or uneven surfaces, alone, does not warrant a conclusion that she could not ambulate effectively. Defendant argues that even with the limitation, the focus is on the ability to perform daily activities, and Plaintiff could perform those.

It is well established that *all* of the specified medical criteria must be matched to meet a listing. An impairment that manifests only some of the criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1988). Here, the record shows that Plaintiff is capable of carrying out activities of daily living, including cooking, cleaning, doing laundry, attending appointments, etc. The ALJ noted Plaintiff was able cook, clean, and do laundry with breaks. (R. 30) (citing Exhibit 10E, page 3). Plaintiff was also able to sit for an hour at church with position changes. *Id.* Plaintiff's own hearing testimony revealed she could walk a block before she needed to rest and could stand for fifteen minutes. (R. 24). Plaintiff also testified she could attend appointments, but she would need to rest afterwards. *Id.* And, as recent as a February 2018 follow up appointment, Plaintiff reported she was exercising regularly. (R. 29). As noted in the ALJ's

decision, this is substantial evidence that Plaintiff can "sustain[] a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B2b2.

Additionally, the physical examinations in the record show that Plaintiff is capable of ambulating effectively, and support the ALJ's conclusion that Plaintiff's impairments do not meet or equal all of the criteria for Listing 1.00B2b(2). Specifically, physical examinations performed by Dr. Lackey on October 18, 2016 (R. 423), November 4, 2016 (R. 429), June 19, 2017 (R. 468), and February 27, 2018 (R. 514), by Dr. Brett Hubbard on May 4, 2016 (R. 374) and June 6, 2016 (R. 376) and three nurse practitioners on December 5, 2016 (R. 432), December 22, 2016 (R. 445), February 16, 2017 (R. 495), and May 23, 2018 (R. 504) note "steady gait unassisted with equal stride and good base of support." Accordingly, Plaintiff has not met her burden to show that her impairments meet all of the criteria of Listing 1.00.

Alternatively, Plaintiff argues that the ALJ did not sufficiently explain why he gave little weight to Dr. Lackey's opinion in finding that Plaintiff's impairments do not meet or medically equal a Listing in section 1.00 (Musculoskeletal Impairments). The ALJ found that "the limitations offered by Dr. Lackey are not consistent with the medical evidence of record or the claimant's own statements." (R. 30). The ALJ provided a paragraph detailing the evidence in the record to support this conclusion. She noted Dr. Lackey's notes suggesting that Plaintiff has to rest frequently, that she is limited to only 30 minutes of walking at a time, and that she should use a "slow pace." *Id.* However, she explained that Dr. Lackey's own findings showed normal gait, no edema, full range of motion of the trunk

13

and elbow with multiple typical fibromyalgia tender points. (R. 31). The ALJ noted that Dr. Lackey assessed Plaintiff's fibromyalgia as stable in January 2018, and that her physical exam was unchanged. *Id*. Additionally, in the May 30, 2018 MSS, Dr. Lackey also checked boxes indicating that Plaintiff can perform numerous other activities, including shopping, traveling without a companion and without assistance, and ambulating without using a wheelchair or two canes or crutches. (R. 29, 536). Thus, the ALJ fulfilled her duty to provide specific, legitimate reasons not to accord controlling weight to Dr. Lackey's opinion regarding Plaintiff's ability to walk on rough or uneven surfaces. *See Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003).

Aside from the single limitation noted in Dr. Lackey's MSS, there is nothing in the record to indicate Plaintiff could not ambulate effectively. On the contrary, when Plaintiff's ability to stand or walk is noted in the medical records, she was consistently observed to have a normal or steady gait and station. For example, in a September 24, 2016 physical examination, Dr. Crysten Cheatwood, D.O. noted that Plaintiff's "gait was stable with normal speed and stability. No limp present. Claimant does not require the use of assistive devices to ambulate." (R. 399). And Dr. Lackey also indicated that Plaintiff can climb a few steps at a reasonable pace without the use of a single hand rail and can use standard public transportation. (R. 536). Accordingly, substantial evidence supports the ALJ's decision to attribute little weight to Dr. Lackey's opinion.

Finally, Plaintiff argues that the ALJ failed to adequately discuss Dr. Lackey's MSS at step three, in finding that Plaintiff does not meet or equal a Listing. However, the ALJ explained at step three that the evidence supporting her conclusion would be set forth in

other portions of her decision. (R. 21-22). As discussed *supra*, the ALJ's decision reasonably explained her evaluation of Dr. Lackey's opinion, and that evaluation is supported by substantial evidence. Nothing precludes the ALJ from setting forth her reasoning in this fashion. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting our review, we should, indeed must, exercise common sense. The more comprehensive the ALJ's explanation, the easier our task; but we cannot insist on technical perfection.").

Based on the medical records and Plaintiff's testimony, the ALJ reasonably found that the Plaintiff does not have an impairment that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.[3]  The undersigned finds that there is substantial evidence in the record that Plaintiff is able to ambulate effectively and carry out activities of daily living.  Therefore, the undersigned finds there was no error in the ALJ's determination that the Plaintiff's limitations do not equal a listing.

---

[3]     In her reply brief, Plaintiff also argues that the ALJ failed to properly consider whether Plaintiff's fibromyalgia medically equals a Listing. However, the ALJ correctly noted the appropriate ruling regarding evaluation of fibromyalgia (R. 21-22), and for the reasons discussed *supra*, the ALJ's decision reflects adequate consideration of the medical evidence in the record supporting the ALJ's determination at step three.

## **Conclusion**

The Court finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts. The Court further finds there is substantial evidence in the record to support the ALJ's decision. Accordingly, the ALJ's decision finding Plaintiff not disabled is **affirmed**.

ORDERED this 29th day of March, 2021.

*Christine D. Little*
Christine D. Little
United States Magistrate Judge